**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---------------------------------------------------------------x
KAREN SCHROCK, individually and on behalf :
of a class of similarly situated individuals : No. 1:10-cv-07230
:
                          Plaintiff, : Judge Gary Feinerman
: Magistrate Judge Arlander Keys
                    v. :
WENNER MEDIA LLC, a Delaware limited :
liability company; and CONSUMER BENEFIT :
SERVICES, INC., an Illinois corporation, :
:
                        Defendants. :
---------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF DEFENDANT WENNER
MEDIA LLC'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Wenner Media LLC ("Wenner") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Karen Schrock's Class Action Complaint because the complaint fails to satisfy federal pleading requirements.

**INTRODUCTION**

      Plaintiff Karen Schrock ("Plaintiff") has filed a complaint and putative nationwide class action, asserting that defendants Wenner and Consumer Benefit Services, Inc. ("CBS") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") by allegedly sending text messages to Plaintiff's cellular phone. The cookie-cutter complaint is replete with general and conclusory allegations and is so skeletal that it is impossible for Wenner to determine whether it had even any tangential involvement in the alleged conduct complained of. Although the complaint alleges that "Defendants" or their "agents" sent unauthorized text message calls to

consumers' cell phones "throughout the nation" (Cplt. ¶ 1), Plaintiff sets forth no facts, as to Wenner, to support such an accusation.

Plaintiff alleges that Defendants and their agents sent "mass transmissions" of unauthorized text messages but only provides the text, subject matter and approximate date of a sum total of two of these text messages, neither of which refer to Wenner or any of its magazines. There is no allegation that Plaintiff ever responded to the phone number listed in either of the text messages, was presented at any time with an offer for Wenner's publications, or ever signed up for a subscription to any of Wenner's publications. The *sole* allegation that even refers to Wenner itself is an allegation that undisclosed "recipients" of text messages (but not, apparently, Plaintiff herself) who call the number at some undisclosed time after receiving the text messages, and accept some sort of undisclosed offer presented therein, may see a change on their credit cards that reads "WMA Us Weekly." (*See* Cplt. ¶ 19.)

Based on the Complaint there is no way to tell what involvement, if any, Wenner had in the dissemination of the two alleged text messages, or any other text message in the alleged "mass transmission," because none is provided. This is plainly insufficient. Wenner is clearly entitled to know what role it allegedly played in the dissemination of each of the text messages that plaintiff seeks to hold it liable for in order to properly defend itself.

The Supreme Court made clear in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) that the standard set by Rule 8 is more than a mere formality. While Rule 8 "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint fails to meet this standard "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*,

2

550 U.S. at 557). As demonstrated below, Schrock's complaint constitutes nothing other than a formulaic recitation of the elements of a cause of action devoid of the factual support required under the federal rules. Such tactics are precisely what the Supreme Court's decisions in *Iqbal* and *Twombly* are intended to foreclose and are insufficient in this district the context of pleading a violation of the TCPA. *See Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009). The complaint should therefore be dismissed.

## STATEMENT OF RELEVANT FACTS

**A.     The Complaint**

Schrock, a resident of Indiana, seeks to represent a nationwide class of over 1,000 persons who "received one or more unauthorized text message advertisements on behalf of Defendants." (Cplt. ¶¶ 5, 22-23.) Schrock accuses the defendants CBS and Wenner (collectively, "Defendants") – notwithstanding that the companies have no relationship with each other – of engaging in what she describes as "an especially pernicious form of marketing: the transmission of unauthorized advertisements in the form of 'text message' calls to the cellular telephones of consumers throughout the nation." (*Id.* ¶ 1.)

Schrock makes broad, conclusory allegations regarding the use of dedicated telephone numbers which enabled Defendants to send "mass transmission of wireless spam to a list of cellular telephone numbers, including Plaintiff's." (*Id.* ¶ 20.) The complaint alleges that *"[b]eginning in at least 2009* and *continuing* for months thereafter, Defendants and their agents caused *mass transmissions* of wireless spam to cell phones of what they hoped were potential customers of Defendants' subscription products, including *Us Weekly*, ID Sentinel Alert and United Benefit Advantage, among others." (*Id.* ¶ 15, emphasis added.) The complaint then sets forth the language of only two text messages (with the date of receipt amorphously pled as "on or about …." and without pleading the number at which the messages were received), and has

3

otherwise provided no specific information about any other text messages allegedly received by her or anyone else. Plaintiff alleges that she did not "consent" to the receipt of the text messages referred to in the Complaint or "any other such wireless spam text message" from the Defendants. (*Id.* ¶ 21.)

The complaint asserts – without any factual support or detail – that "Defendants' agents" operated a dedicated telephone number (with a California area code) that transmits text messages "*en masse*" through "devices known as modem banks and/or carrier gateways." (*Id.* ¶ 17.) As to the second text, Plaintiff simply claims that when her cell phone rang again another "dedicated" telephone number appeared. (*Id.* ¶ 18.) Schrock then claims, without any further detail, that "Defendants and their agents made unsolicited commercial text calls to a list of wireless telephone numbers of Plaintiff and the other members of the Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator." (*Id.* ¶ 28.)

The complaint alleges that these texts were made "*en masse* through the use of a dedicated telephone number [sic] without the prior express consent of Plaintiff and the Class" (*Id.* ¶ 29; *see also id.* ¶ 21), and estimates the Class as being over 1,000 consumers who are located throughout the nation. (*Id.* ¶¶ 1, 22-23.) Schrock is deliberately vague as to whether she has, at any time, expressly or implicitly consented to the receipt of *any* text messages or otherwise opted into any websites where, as part of its terms, she consented to the receipt of text messages. (*See id.* ¶ 21.) Finally, Plaintiff states that "Defendants' misconduct was willful and knowing" and entitles her, and the Class, to treble the amount of statutory damages. (*Id.* ¶ 31.)

**B.     Wenner**

Wenner is a Delaware limited liability corporation with a principal place of business at 1290 Sixth Avenue, New York, New York. Wenner is the parent of Men's Journal LLC, Rolling

4

Stone LLC and US Weekly LLC, which publish, respectively, *Men's Journal*, *Rolling Stone*, and *Us Weekly* publications (the "Magazines"). (*See id.* ¶¶ 1, 6.) Wenner has *no* relation to the co-defendant CBS, which is alleged to be a "marketer of numerous subscription products including personal identification theft prevent services ('ID Sentinel Alert'), group buying club memberships ('United Benefit Advantage') and Defendant Wenner's magazines." (*Id.* ¶ 7.)[1]

**C.     The TCPA**

The relevant portion of the TCPA provides as follows:

> (b)     Restrictions on use of automated telephone equipment.
>
>  (1)     Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> (A)     To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> …
>
> (iii)     To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1) (2006). The statute further defines "automatic telephone dialing system" (the "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential generator; and (B) to dial such numbers."

*Id.* § 227(a)(1).

---

[1]   CBS states that it is an "international loyalty marketing company providing innovative and profitable loyalty programs." http://www.consumerbenefit.com/assets/articles/cardspayments_advertorial1107.pdf. Wenner is not familiar with "ID Sentinel Alert" or "United Benefit Advantage," the products that Plaintiff alleges were sold via wireless spam to cell phones. (Cplt. ¶ 15.)

**ARGUMENT**

**A.     The Complaint Should be Dismissed for Failure to State a Claim**

    **1.     Conclusory Allegations That Are Not Supported By Well-Pleaded Factual Allegations Do Not Satisfy the Pleading Standards**

Schrock must show that she is entitled to relief by "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The standard is more than a mere formality. As the Supreme Court made clear in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009), "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") Factual recitations – even well-pleaded facts – which "do not permit the court to infer more than the mere possibility of misconduct" are insufficient to show that the pleader is entitled to relief. *Spaulding v. Abbott Laboratories*, 2010 WL 4822894, at *2 (N.D. Ill. Nov. 22, 2010) (Feinerman, J.) (quoting *Iqbal*, 129 S. Ct. at 1950). Even if there is a possibility that discovery could turn up evidence to support a cause of action the Supreme Court has made clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

6

**2. The Complaint Makes Broad Allegations Regarding *"En Masse"* Text Messages Without Any Factual Support**

A Plaintiff must allege the content and dates of text messages allegedly sent in violation of the TCPA in order to meet the pleading standard required by Rule 8(a)(2). *See Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009).[2] In *Abbas*, a situation much like the one here was presented. The plaintiff's complaint alleged numerous violations of the TCPA, but only provided facts regarding the initial offending SMS or text message that he allegedly received from the defendant.[3] There, as here, the plaintiff made broad allegations regarding subsequent messages he allegedly received, but did not provide the specific dates of the messages, the text of the message, and the number from which he received the messages. The Court held that "while Rule 8(a)(2) does not require facts to be pled with particularity,

---

[2] Other challenges to the TCPA, including whether a text message is a "call" within the meaning of the TCPA, are not being raised on the present motion but are expressly preserved. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950-54 (9th Cir. 2009) (a text message sent to a cellular telephone is a call within the meaning of the TCPA); *see also Abbas*, 2009 WL 4884471 at *4-7; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010). While the TCPA exempts those calls "made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A), this issue needs to be explored on a fuller record. It is highly possible that Schrock did, at some point, provide consent to receive text messages and was therefore being called based on her volitional submission of her cell phone to a customer database.

[3] Plaintiffs were represented in *Abbas* by the same counsel representing Plaintiff here. The complaints in the *Abbas* case and this case are remarkably similar. *See Abbas* Complaint, 1:09-cv-3413 (N.D. Ill.), Docket No. 1-2 at 2-8. For example, in *Abbas* the complaint that was found not to satisfy federal pleading standards alleged that "[b]eginning in at least 2006 and continuing for months if not years thereafter, Defendant and its agents caused mass transmissions of wireless spam to the cell phones of what it hoped were potential customers of its clients' consumer loan products." (*Id*. ¶ 12.) The complaint in *Abbas* further alleges that "over the course of several months, Plaintiff received numerous similar wireless spam text messages from Defendant." (*Id.* ¶ 18.) The class size in *Abbas* is similarly alleged to be over 1,000 members. (*Id.* ¶ 21.) Similarly, the complaint in *Abbas* sets forth only one text message but alleges that unauthorized text messages were sent to Plaintiff's cellular telephone over the next several month and he received "numerous" similar wireless spam text messages from Defendant. (*Id.* ¶¶ 17-18.) In *Kramer v. Autobytel*, 2010 WL 5463116 (N.D. Cal. Dec. 29, 2010), another case filed by Plaintiff's counsel alleging a violation of the TCPA, the Northern District of California discussed *Abbas* but did not address whether the pleading satisfied its standards.

7

[plaintiff's] allegations here provide no notice to [defendant] about the subsequent messages [plaintiff] allegedly received." In particular, the Court noted that fair notice regarding the subsequent messages was required because plaintiff was seeking recovery for each alleged individual violation of the TCPA. 2009 WL 4884471 at *2. More specifically, the Court stated as follows:

> After alleging several facts regarding the initial, offending SMS message he allegedly received from Selling Source, Abbas makes broad, conclusory allegations regarding the "numerous" further messages that he allegedly received. *See* Compl. ¶¶ 17, 18. While Rule 8(a)(2) does not require facts to be pled with particularity, Abbas's allegations here provide no notice to Selling Source about the subsequent messages Abbas allegedly received. There is no allegation regarding when Abbas received the later messages, what those messages stated, or from what numbers he received the later messages. Some fair notice to Selling Source is particularly necessary here because Abbas seeks recovery for each violation of the TCPA. *See* Compl. ¶ 26. Abbas's allegations regarding subsequent messages he received are insufficient but not beyond cure, and so his Complaint is dismissed with leave to amend.

*Id.*; *see also Bridge v. Ocwen Fed. Bank*, 669 F. Supp. 2d 853, 856 (N.D. Ohio 2009) ("[W]hile the complaint [alleging a violation of the TCPA] does not need detailed factual allegations to survive a motion to dismiss, a plaintiff is obliged to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). That is precisely the situation here.

The complaint here fails to properly plead valid claims under *Twombly* and *Iqbal*, and more specifically, *Abbas*. The allegations of the complaint are general and conclusory, and provide no facts making it plausible (rather than possible) that Wenner – as opposed to CBS or perhaps unidentified "agents" of "Defendants" – used a random or sequential number generator to transmit any text messages to Schrock, and certainly not text messages *en masse*. For instance, although Schrock alleges that she herself received "mass transmission of wireless

8

spam" by the "Defendants and their agents" or "Defendants' agents" or "Defendants and/or their agents" beginning in 2009 (compare Cplt. ¶ 15, ¶ 17 and ¶ 19), she specifically sets forth in her complaint the language of only two alleged text message that were received "on or about" certain dates, and she fails to identify any other person who received any text message from the Defendants or their agents. Presumably, it would be quite easy for Schrock to set forth not only the language of each text message she allegedly received from Wenner itself – as opposed to lumping Wenner under the general label of "Defendants" – but also the date and time (as well as the specific cellular telephone number to which each text message was allegedly transmitted) and the "agents" that allegedly offered "Defendants' products." (Cplt. ¶ 19.)

### 3. The Complaint Fails to Allege Any Factual Support That Wenner Or Its "Agents" Sent the Text Messages

The complaint is particularly uninformative given that Wenner has *no* relationship with CBS and, to Wenner's knowledge, the Defendants' products are not sold together, and Plaintiff does not alleges any facts to demonstrate that there is any such relationship.[4] There is no way to tell what involvement, if any, Wenner had in the dissemination of the text messages because Plaintiff does not provide any information regarding these messages other than to state that "[w]hen recipients of the above text messages call the toll-free telephone numbers identified in the bodies of such messages, Defendants and/or their agents present offers for Defendants' products, which when accepted appear on consumers' credit card accounts as charges from the Defendants, identified specifically as 'WMA Us Weekly,' 'ID Sentinel Alert,' 'United Benefit Advantage,' among others." (Cplt. ¶ 19.) The Complaint does not allege the name of anyone

---

[4] In order to track how the sale of a subscription is generated, Wenner needs to know the name and mailing address of the subscriber. Wenner asked Plaintiff's counsel if she could provide the name of the person who actually incurred the charge on his/her credit card statement reading "WMA Us Weekly" that is referenced in the Complaint, so that it could attempt to trace how the charge originated, but Plaintiff's counsel refused to provide Wenner with this information.

9

who actually called the numbers referenced in the alleged text messages or anyone who actually incurred the charge "WMA Us Weekly" on a credit card statement. Moreover, as noted, although Schrock alleges that when "recipients" of the text messages call the toll-free number set forth in the texts the "Defendants' products" are offered, it is entirely unclear whether this is so with respect to recipients of all of the "mass transmissions" of text messages, recipients of both of the two text messages mentioned in the complaint, or recipients of one of the text messages (and if so, which one). (Cplt. ¶ 19.) Thus, as Plaintiff's complaint is currently drafted, it is impossible to discern whether defendant Wenner – as opposed to the "Defendants" and/or "their agents" – is being accused of playing a role in disseminating one or all of the alleged text messages.[5]

The complaint is further deficient in that it fails to set forth any facts to support Schrock's vague claim that "agents" of either Wenner and/or Defendants sent the text messages. Instead, the complaint simply concludes that these undisclosed "agents" are, in fact, agents and that they are agents of both CBS and Wenner. This is plainly improper. *See*, *e.g.*, *Twombly*, 550 U.S. at 564 n.10 (criticizing complaint that "mentioned no specific time, place, or person involved in the alleged conspiracies" because a "defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin"). Speculation, devoid of facts to establish that someone is acting as an "agent", is plainly insufficient to support an allegation. *See Scheinman ex rel. Scheinman v. Martin's Bulk Milk Service, Inc.*, 2010 WL 3701334 (N.D. Ill.

---

[5] This motion does not address the sufficiency of Schrock's class allegations. This issue will be addressed more fully in the event the Court grants Plaintiff leave to file her motion for class certification. It appears however that Schrock's conclusion, for example, that there are potentially "over 1,000 class members" suffers from the same shortcoming as other allegations in the complaint. *See Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F. Supp. 2d 610, 617 n.6 (N.D. Ill. 2009) (questioning whether identical allegation regarding likely class size was "anything more than a 'naked assertion devoid of further factual enhancement.'")

10

Sept. 9, 2010) ("Merely pleading legal conclusions of agency is not sufficient," rather facts that would establish such a relationship must be alleged).

### 4. The Complaint Simply "Parrots" the Willfulness Language of the TCPA Without Any Support

Finally, Plaintiff seeks treble damages under the TCPA based on the conclusory allegation that "Defendant's misconduct was willful and knowing." (Cplt. ¶ 31.) Plaintiff pleads *no* facts that would establish the requisite level of intent but merely "parrots" the statutory language of the TCPA. This is plainly insufficient. *Gardner v. Appleton Baseball Club, Inc.*, 2010 WL 1368663, at *6 (E.D. Wisc. Mar. 21, 2010) ("[B]ecause there is nothing in the complaint to distinguish the willfulness of *this* Defendant from any other imaginable defendant, the complaint fails to satisfy Rule 8." (emphasis in original)). *See Sengenberger v. Credit Control Services, Inc.,* 2010 WL 171270, at *6 (N.D. Ill. May 5, 2010) (discussing standard for finding willfulness under the TCPA on summary judgment motion).

\* \* \* \* \*

In sum, Wenner is entitled to know the content and dates of the alleged messages that are at issue in this case, the basis for Plaintiff's claim that Wenner sent the offending text messages or "agents" of the Defendants did, and the basis for the claim that treble damages are appropriate based on Wenner's alleged misconduct. Plaintiff's failure to allege these facts is a clear violation of Rule 8(a)(2). Because the complaint is too general and conclusory to satisfy federal pleading requirements, it should be dismissed.

DWT 16281699v3 0055960-000013

## CONCLUSION

For the foregoing reasons, Wenner respectfully requests that Plaintiff's claim be dismissed.

Dated: January 14, 2011                                    Respectfully submitted,

                                                           WENNER MEDIA LLC

                                                           By: /s/ Sharon L. Schneier
                                                                One of its Attorneys

Sharon L. Schneier (admitted *pro hac vice*)
Davis Wright Tremaine LLP
1633 Broadway – 27th Floor
New York, New York 10019
(212) 489-8230
sharonschneier@dwt.com

Mark E. Enright (ARDC No. 6185357)
John L. Ropiequet (ARDC No. 2376563)
Christina E. Lutz (ARDC No. 6297074)
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-7100

12

## CERTIFICATE OF SERVICE

I, Sharon L. Schneier, an attorney, certify that I caused the foregoing Memorandum in Support of Defendant Wenner Media LLC's Motion to Dismiss the Class Action Complaint to be served via the Court's CM/ECF filing system on January 14, 2011, on the following:

>Michael J. McMorrow
>Ryan D. Andrews
>Edelson McGuire LLC
>350 N. LaSalle St., Suite 1300
>Chicago, IL 60654
>mjmcmorrow@edelson.com
>randrews@edelson.com
>
>*Attorneys for Plaintiff Karen Schrock*
>
>
>Michael D Hayes
>Varga, Berger, Ledsky, Hayes & Casey
>125 South Wacker Drive, Suite 2150
>Chicago, IL 60606
>mhayes@vblhc.com
>
>David J. Fish
>The Fish Law Firm, P.C.
>1770 North Park Street, Suite 202
>Naperville, IL 60563
>dfish@fishlawfirm.com
>
>*Attorneys for Consumer Benefit Services, Inc.*

                                         /s/  Sharon L. Schneier